**UNITED STATES of America**

v.

**Philip CRISPINO, Defendant.**

**No. 74 Cr. 932.**

United States District Court,
S. D. New York.

Feb. 13, 1975.

On Motion for Reconsideration
March 24, 1975.

---

6. I. e., metropolitan versus rural.

7. Affidavit of Aaron Handelman, File Document No. 7 at ¶ 5.

William I. Aronwald, Sp. Atty., Dept. of Justice, Paul J. Curran, U. S. Atty., for the Southern District of New York, for plaintiff.

Jay Goldberg, New York City, for defendant.

WERKER, District Judge.

On October 2, 1974 Philip Crispino was charged by the grand jury with one count of collection of extensions of credit by extortionate means, 18 U.S.C.A. § 894, and one count of interference with commerce by threats or violence, 18 U. S.C.A. § 1951. The attorney who presented the case to the grand jury was Charles E. Padgett, a special attorney with the Organized Crime and Racketeering Section of the Criminal Division, United States Department of Justice. Crispino has now moved pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure to dismiss the indictment on the ground that Mr. Padgett was not authorized to appear before the grand jury in this case. After a careful review of the statutory framework under which Mr. Padgett was appointed and the cases which have interpreted those statutes, the court has reached the conclusion that Mr. Padgett was not properly authorized to appear before the grand jury and, as a conse-

quence, the indictment must be dismissed.

The statute under which Mr. Padgett was appointed a Special Attorney is codified at 28 U.S.C.A. § 515 [1] and provides:

(a) The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

(b) Each attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law. Foreign counsel employed in special cases are not required to take the oath. The Attorney General shall fix the annual salary of a special assistant or special attorney at not more than $12,000.

On June 1, 1973 Henry Petersen, then Assistant Attorney General in charge of the Criminal Division, wrote the following letter to Mr. Padgett:

Department of Justice
Washington 20530
June 1, 1973

Mr. Charles E. Padgett
Criminal Division
Department of Justice
Washington, D. C.

Dear Mr. Padgett:

The Department is informed that there have occurred and are occurring in the Southern District of New York and other judicial districts of the United States violations of federal criminal statutes by persons whose identities are unknown to the Department at this time.

As an attorney at law you are specially retained and appointed as a Special Attorney under the authority of the Department of Justice to assist in the trial of the aforesaid cases in the aforesaid district and other judicial districts of the United States in which the Government is interested. In that connection you are specially authorized and directed to file informations and to conduct in the aforesaid district and other judicial districts of the United States any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized to conduct.

Your appointment is extended to include, in addition to the aforesaid cases, the prosecution of any other such special cases arising in the aforesaid district and other judicial districts of the United States.

You are to serve without compensation other than the compensation you are now receiving under existing appointment.

Please execute the required oath of office and forward a duplicate thereof to the Criminal Division.

Sincerely,
/S/ HENRY E. PETERSEN
Assistant Attorney General

Since section 515(a) provides that the Attorney General is the official who is to appoint special attorneys, a question arises as to whether Mr. Petersen was authorized to make the appointment. Section 510 of Title 28, United States Code [2] permits the Attorney Gen-

---

1. This section originates with the Act of June 30, 1906, 34 Stat. 816, previously codified at 5 U.S.C. § 310.

2. That section provides that: "The Attorney General may from time to time make such provisions as he considers appropriate au-

eral to delegate any of his functions to "any other officer" of the Department of Justice. By regulation, the Attorney General delegated certain of his powers, including the coordination of enforcement activities directed against organized crime and racketeering and the designation of attorneys to present evidence to grand juries, to the Assistant Attorney General in charge of the Criminal Division.[3]

It thus appears that the power to appoint Special Attorneys was properly delegated to Mr. Petersen.[4] This is not a case of improper delegation as was found in United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). That case involved a question of delegation of power to authorize wiretaps under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. Section 2516(1) of that act allows the Attorney General or any Assistant Attorney General specially designated by the Attorney General to authorize the application. The official who authorized the wiretap in *Giordano* was in fact the Executive Assistant to the Attorney General. The Court concluded that despite the broad delegation provision in 28 U.S.C. § 510, Congress in enacting § 2516(1) "intended to limit the power to authorize wiretap applications to the Attorney General himself and to any Assistant Attorney General he might designate." 416 U.S. at 514, 94 S.Ct. at 1826. In enacting section 515(a) Congress intended to limit the Attorney General's power of appointment to those attorneys with special skills and to special cases or cases of unusual importance to the government but there was no limitation imposed on the Attorney General's ability to delegate his power of appointment of Special Attorneys to other officers of the Department of Justice such as Mr. Petersen.[5]

The more serious and complex question presented in this motion is whether Special Attorney Padgett within the meaning of section 515(a) was "specifically directed by the Attorney General" (or as in this case by a subordinate of the Attorney General to whom the Attorney General had properly delegated the function to appoint Special Attorneys) to present the *Crispino* case to the grand jury. To resolve this question it is necessary to examine the legislative

---

thorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

3. 28 C.F.R. § 0.55 reads in pertinent part as follows: "Subject to the general supervision and direction of the Attorney General, the following described matters are assigned to, and shall be conducted, handled, or supervised by, the Assistant Attorney General in charge of the Criminal Division: (g) Coordination of enforcement activities directed against organized crime and racketeering." Under 28 C.F.R. § .60 "The Assistant Attorney General in charge of the Criminal Division is authorized to designate attorneys to present evidence to grand juries in all cases assigned to, conducted, handled, or supervised by the Assistant Attorney General in charge of the Criminal Division."
28 C.F.R. § 0.55 was amended by Order No. 543–73, 38 F.R.29585 (Oct. 26, 1973) to read: "Subject to the general supervision of the Attorney General and under the direction of the Deputy Attorney General . . . ." The change does not affect the

validity of the delegation to Mr. Petersen. For one thing, the amendment was made after Mr. Petersen had sent the commission letter to Mr. Padgett (June 1, 1973). Also, as discussed *infra*, nothing in the legislative history of what is now section 515(a) indicates that Congress intended to limit the delegation of the Attorney General's power to appoint special attorneys. *Compare* United States v. Giordano, 416 U.S. 505, 512–523, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

4. Crispino originally questioned whether Mr. Petersen was the person who actually signed Mr. Padgett's commission letter. However, at oral argument his counsel agreed to accept the government's representation that Mr. Petersen signed the letter. In addition, the government is in the process of obtaining an affidavit from Mr. Petersen as to the authenticity of his signature on the letter.

5. The House Report discussed *infra*, other than those limitations mentioned, does not limit the Attorney General's delegation powers. *See* May v. United States, 236 F. 495 (8th Cir. 1916).

background of the original act which is now codified as 28 U.S.C. § 515(a) and the cases which have construed that act.

By the Judiciary Act of 1789, 1 Stat. 73, Congress provided for the appointment of attorneys for each district whose duty was to prosecute "crimes and offences, cognizable under the authority of the United States . . . ." 1 Stat. at 92. These attorneys were eventually called District Attorneys and are now known as United States Attorneys.[6] The same act also created the office of the Attorney General who in 1861 was charged with the general superintendence and direction of the District Attorneys.[7] Despite the Attorney General's power of supervision, it was still the function of the District Attorneys to represent the United States in criminal and civil actions. *See* The Confiscation Cases, 74 U.S. (7 Wall) 454, 457–58, 19 L.Ed. 196 (1868).[8]

In 1861 Congress also provided that the Attorney General could appoint special assistants to the District Attorneys to aid them in the discharge of their duties.[9] When the Department of Justice was created in 1870 [10] the Attorney General was authorized to appoint "special assistant[s] to the Attorney General" to assist in the "trial of any case." [11] As a check on his power to employ special counsel when needed, Congress required the Attorney General to certify that the services of special counsel were actually rendered and that the same services could not have been performed by the Attorney General or some other officer of the Department of Justice.[12]

6. The wording of the statutory duty of the United States Attorneys is basically the same as in 1789. 28 U.S.C. § 547 reads in part: "Except as otherwise provided by law, each United States Attorney, within his district, shall—(1) prosecute for all offenses against the United States . . . ."

7. Act of August 2, 1861, 12 Stat. 285, previously codified at 5 U.S.C. § 317.

8. In Sutherland v. International Ins. Co., 43 F.2d 969, 970 (2d Cir. 1930), Judge Learned Hand commented that the Confiscation cases had "announced obiter (page 457 of 7 Wall., 19 L.Ed. 196) that it was the settled rule of United States courts to recognize no suits prosecuted in the name and for the benefit of the United States unless it was represented by a district attorney. While this is perhaps not conclusive, as it was not in any sense made the basis of the decision, it cannot be disregarded . . . ." *See also* United States v. Rosenthal (C.C.S.D.N.Y. 1903). In San Francisco v. United States, 21 Fed.Cas. 365–371 (No. 12, 316) (C.C.N. D.Cal.1864) (Field, J.) the court made the following comment on a dispute between a special attorney and the local district attorney: "The position of the district attorney in claiming the control of the case was entirely correct. He is the regular officer of the government, having charge of all the legal proceedings within his district, subject only to the general direction and supervision of the Attorney General. When other counsel are employed in these proceedings, it is to aid him in their management, not to assume his authority or direct his conduct. The position of Mr. Williams was solely that of Assistant Counsel. He could not conduct the proceedings in the case, or bind the government by his admission or action."

9. Act of August 21, 1861, 12 Stat. 285, previously codified at section 363 of Rev.Stat. (1873), and 5 U.S.C. § 312, currently codified at 28 U.S.C. § 543(a) (1970).

10. Act of June 22, 1870, 16 Stat. 162.

11. Act of June 22, 1870, 16 Stat. 162, previously codified in section 366 of Rev.Stat. (1873), and 5 U.S.C. § 315, and currently codified at 28 U.S.C. § 515(b). By Act of April 17, 1930, Congress added to the wording of then 5 U.S.C. § 315 so that the attorneys could be commissioned special attorneys rather than special assistant to the Attorney General. The extra wording was only added to end the confusion over the term "special assistant to the Attorney General" which had created misunderstandings because of the prestige associated with the term. *See* H.R.Rep.No.229, 71st Cong., 2d Sess. (1930) at 1.

12. The applicable section of the Rev.Stat. (1873) provided:

"Sec. 365. No compensation shall hereafter be allowed to any person, besides the respective district attorneys and assistant district attorneys, for services as an attorney or counsellor to the United States, or to any branch or Department of the Government thereof, except in cases specially authorized by law, and then only on the certificate of the Attorney-General that such services were actually rendered, and that the same could not be performed by the Attorney-General, or Solicitor-Gen-

*See* United States v. Crosthwaite, 168 U.S. 375, 18 S.Ct. 107, 42 L.Ed. 507 (1897). From 1861 to 1903 the Attorney General often employed such special counsel either as assistants to the various district attorneys or as special assistants to the Attorney General. Such counsel not only assisted in the trial of cases, but also participated in grand jury proceedings.[13] The right of the special attorneys to appear before grand juries was not questioned until 1903 when in the case of United States v. Rosenthal, 121 F. 862 (C.C.S.D.N.Y.1903), the Court held that the power of the Attorney General to conduct and argue any "case" in any court did not authorize him to make appearances before grand juries.[14]

In *Rosenthal*, Mr. W. Wickham Smith was commissioned a Special Assistant to the Attorney General "to investigate and report concerning alleged fraudulent importations of Japanese silks at the port of New York." *Rosenthal, supra* 121 F. at 863. Since the Court had concluded that the Attorney General himself was not authorized to appear before grand juries, then special assistants to the Attorney General were not "endowed with a power denied to the chief officer himself?" *Id.*, 121 F. at 869.[15] The powers of the special assistants were limited to participation in trials and litigation already pending. As a direct consequence of the *Rosenthal* decision, Congress passed the Act of June 30, 1906, 34 Stat. 816, which with a few minor changes is currently codified at 28 U.S. C.A. § 515(a).[16] This act enabled special attorneys to conduct legal proceedings, including grand jury proceedings, "when specifically directed by the Attorney General."

The legislative history of the Act of June 30, 1906 provides an important source for understanding the purposes of the statute as envisioned by Congress. *Cf.* United States v. Wise, 370 U.S. 405, 414, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962); Flora v. United States, 362 U. S. 145, 151, 80 S.Ct. 630, 634, 4 L.Ed.2d 623 (1960) ("frequently the legislative history of a statute is the most fruitful source of instruction as to its proper interpretation"). *See also* N.L.R.B. v. Bell Aerospace Co., 416 U.S. 267, 274, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). The Act of 1906, was introduced in both Houses of Congress, and it was the House version of the bill that passed.[17]

eral, or the officers of the Department of Justice, or by the District Attorneys.

In United States v. Crosthwaite, 168 U.S. 375, 379, 18 S.Ct. 107, 108, 42 L.Ed. 507 (1897) the court noted that "[i]t was left to that officer [the Attorney General] to determine whether the public interests required the employment of special counsel. But that the discretion given to him might not be abused, and that unnecessary expense might be avoided, it was declared (section 365) that, except in the cases of the respective district attorneys and assistant district attorneys, no compensation should be allowed . . . unless specifically authorized by law . . . ." Crosthwaite specifically held that special attorneys are not regular Assistant District Attorneys. *Id.* at 381.

13. *See* H.R.Rep.No.2901, 59th Cong., 1st Sess. (1906) at 1.

14. 121 F. at 866–67.

15. There was some controversy as to whether the decision in *Rosenthal* implied that attorneys appointed as special assistants to the District Attorneys as well as those appointed special assistants to the Attorney General were prohibited from appearing before grand juries. The question turned on whether section 366 of the Rev.Stat. and its limitation of assistance to "the *trial* of any case" had to read together with section 363 under which special assistants to the district attorneys were appointed. *Compare Rosenthal, supra,* and United States v. Virginia-Carolina Chemical Co., 163 F. 66 (C.C.M.D. Tenn.1908) with United States v. Twining, 132 F. 129 (D.N.J.1904) and United States v. Cobban, 127 F. 713 (C.C.D.Mont.1904).

16. That the *Rosenthal* decision caused Congress to enact what is now section 515(a) is made clear by the House Report discussed *infra.*

17. The Senate version of the bill (S. 2969) did not contain the limitation "specifically directed by the Attorney General." *See* 40

The House Report which accompanied the bill provided as follows: [18]

Mr. Gillett of California from the Committee on the Judiciary submitted the following:

The Committee on the Judiciary, having had under consideration the bill (H.R. 17714) to authorize the commencement and conduct of legal proceedings under the direction of the Attorney-General, respectfully report the same back with the recommendation that the same do pass.

The purpose of this bill is to give to the Attorney-General, or to any officer in his Department or to any attorney *specially employed* by him, the same rights, powers, and authority which district attorneys now have or may hereafter have in presenting and conducting proceedings before a grand jury or committing magistrate.

It has been the practice of the Attorney-General for many years to employ special counsel to assist district attorneys in the prosecution of suits pending in their respective districts whenever the public interest demanded it. It has been the practice of such special counsel to appear, with the dis-

Cong.Rec. 7913–14 (1906). The full text of the bill is as follows:

"A BILL. To authorize the Attorney-General and certain other officers of the Department of Justice and special assistants and counsel to begin and conduct legal proceedings in any courts of the United States and before any commission or commissioner or quasi judicial body created under the laws of the United States.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the Attorney-General, the Solicitor-General, the Assistant to the Attorney-General, the Assistant Attorneys-general, special assistants to the Attorney-General, special assistants to the district attorneys, and special counsel appointed under any provision of law are hereby authorized to begin and conduct any kind of legal proceedings, civil or criminal, in any court of any judicial district, or before any commission or commissioner or quasi judicial body created under the laws of the United States, including grand jury proceedings, whether they reside in the judicial district where such proceedings are brought or not: Provided, that all such proceedings shall be begun and conducted by such officials, attorneys, and counsel only under the direction, supervision, and control of the Attorney-General."

S.2969, 59th Cong., 1st Sess. (1906). Senate Report No. 3835, 59th Cong., 1st Sess. (1906) provided:

The Committee on the Judiciary, to whom was referred the bill (S. 2969) authorizing the Attorney-General and certain other officers of the Department of Justice to conduct legal proceedings in any court of the United States, having considered the same, report the bill favorably without amendment.

It is frequently desirable and even necessary that the Attorney-General should detail an officer of his Department to assist some United States attorney in the investigation and prosecution of cases of unusual importance or interest, or to make an independent investigation and report the result to the Department, and, if necessary, to prosecute the same: or, where this latter is impracticable, to appoint a special assistant to the Attorney-General, or special counsel to act independently of the United States attorney, particularly in criminal matters.

In 1903 the Attorney-General, appointed a special assistant to investigate and report in the Japanese silk fraud cases, and it was held (121 F. 826 [862], U. S. v. Rosenthal) that a special assistant to the Attorney-General is not an officer of the Department of Justice under Sections 359 and 367, Revised Statutes, or other provisions of the United States Statutes, and the indictment was quashed because of the presence of this attorney in the grand jury room. That case further holds that neither the Attorney-General, the Solicitor-General, nor any officer of the Department has the power to conduct or aid in the conduct of proceedings before a grand jury. It is clearly a great importance that they should have this power. After asking for reconsideration of the House bill, Senator Kean remarked: "I have examined the House bill. It is much better than the Senate bill, and I withdraw my objection." 40 Cong.Rec. 9662.

18. While some Courts which have construed section 515(a) make reference to the House Report, none sets forth the report in detail. The report is quoted here in full so that the intent of Congress in passing the act may be better understood.

trict attorney, before grand judges and committing magistrates and to assist in the proceeding pending there. This right passed unchallenged for many years, until the Circuit Court for the Southern District of New York, on March 17, 1903, in the case of the United States v. Rosenthal, decided that—

> The Attorney General, the Solicitor General, nor any officer of the Department of Justice, is authorized by sections 359, 367, or any other provision of the Revised Statutes of the United States [U.S.Comp.St. 1901 pp. 207, 209], to conduct, or to aid in the conduct of, proceedings before a grand jury, nor has a special assistant to the Attorney General such power.

And the court further held that—

> A special assistant to the Attorney General, appointed to investigate and report concerning alleged fraudulent importations of Japanese silks at the port of New York, and to prepare and conduct such civil and criminal proceedings as may result therefrom, is not authorized by law to conduct, or to aid the conduct of, proceedings before a federal grand jury, and indictments based upon such proceedings so conducted should be quashed upon motion.[19]

This decision makes the proposed legislation necessary if the Government is to have the benefit of the knowledge and learning of its Attorney-General and his assistants, or of such special counsel as the Attorney-General may deem necessary to employ to assist in the prosecution of *a special case,* either civil or criminal. As the law now stands, only the district attorney has any authority to appear before a grand jury, no matter how important the case may be to the interests of the Government to have

the assistance of one who is *specially or particularly qualified* by reasons of his *peculiar knowledge and skill* to properly present to the grand jury the question being considered by it.

The Attorney-General states that it is necessary, in the due and proper administration of the law, that he shall be permitted to employ special counsel to assist the district attorney in cases which district attorneys or lawyers *do not generally possess,* and in cases of such *usual* [sic] [20] *importance to the Government,* and that such counsel be permitted to possess all of the power and authority, in *that particular case,* granted to the district attorney, which, of course, includes his right to appear before a grand jury either with the district attorney or alone.

It seems eminently proper that such powers and authority be given by law. It has been the practice to do so in the past and it will be necessary that the practice shall continue in the future.

If such a law is necessary to enable the Government to properly prosecute those who are violating its laws, it is no argument against it that some grand jury may be, perhaps, unduly influenced by the demands or importunities that may be made upon it by such special counsel. The same argument can as well be made against permitting a district attorney from attending a sitting of such jury.

There can be no doubt of the advisability of permitting the Attorney-General to employ *special* counsel *in special cases,* and there can be no question that if he has been employed because of his *special fitness* for such a *special case* that the Government should have the full advantage of his learning and skill in every step necessary to be taken before the trial, including that of appearing before grand juries.

19. The quotations are from the headnotes to *Rosenthal,* and not from the body of the text.

20. This appears to be an error and the word should be unusual.

The law proposed by the bill under consideration seems to be very necessary, because of the decision in the Rosenthal case, hereinbefore referred to, and the committee recommend its speedy enactment.

H.R.Rep.No.2901, 59th Cong., 1st Sess. (1906) (emphasis added).[21]

The House Report leaves no room for doubt that Congress intended the Attorney General to have the power to appoint special attorneys to prosecute a particularly important case or a special case or cases. This power was seen as a necessary aid to effective law enforcement. Rather than restricting the appearances of these attorneys to the trial of cases, it was deemed appropriate that they appear in every step of the litigation including grand jury proceedings. However, since the district attorneys and their regular assistants had the responsibility for prosecuting all crimes in their districts, the appearance of special attorneys before grand juries was limited to special cases where the Attorney General concluded that the particular knowledge and skill of these special attorneys would be useful.

Subsequent to the enactment of what is now section 515(a), challenges to the authority of special attorneys to appear before grand juries presented a number of courts with the problem of interpretation of the statute. Specific issues raised included whether the commission of the special attorney had to specify (1) the case(s) to be investigated; (2) the district(s) in which the investigation was to take place; and (3) the statute(s) which was to be the basis for the indictment against the defendant. The commission letter of the special attorney was in fact the "specific direction" of the Attorney General, United States v. Huston, 28 F.2d 451, 454 (N.D.Ohio 1928), and it is the language of that letter which formed the basis for motions to dismiss indictments brought by special attorneys.

A rule of strict interpretation was formulated in United States v. Goldman, 28 F.2d 424 (D.Conn.1928) where an attorney, who was commissioned as a Special Assistant to the United States Attorney for the district of Connecticut, appeared before a grand jury not to assist the district attorney, but to act as a stenographer. In construing the commission of the special attorney, the Court concluded that:

> As we understand it, the commission which may be issued under that act *must* designate the specific case or cases to which the employment relates and the district or districts to which

---

21. There was a minority report where objection was made to the power of special attorneys to appear before grand juries. The full report reads:

> Views of the Minority. We can not agree to the report of the majority of the committee on this bill.
> We are in favor of it, excepting that portion embraced within the words "including grand-jury proceedings."
> There is no objection to the employment by the Government of special counsel and the giving to such counsel all the rights and privileges named in the bill, save the right to appear before the grand jury, and in its room have the prerogative and power of the district attorney. The grand jury is a secret inquisition. Everything taking place in its room is sacred, and in our judgment no person save the district attorney and his assistants in the court for where it is held should be permitted in its secret sessions to advise and control it. To grant the Attorney-General the right to have special and learned counsel to assist in the prosecution and conviction is one thing, to have such counsel aid in receiving an indictment is a very different thing.
> Why should the Attorney-General be permitted to name some non-resident counsel to go before a grand jury to aid in procuring an indictment any more than he should be permitted to name a member of the grand jury itself who was a nonresident?
> It seems to us that part of the bill as reported should be stricken out, especially in view of the fact that the Attorney-General himself has the right in any case of sufficient importance to appear in person.
>
> B. M. Nevin
> Geo. A. Pearre

it extends. If this is not so, it would follow that the Attorney General of the United States could, under the act now under discussion, issue a roving commission without any limitations, extending to every district in the United States and embrace all criminal investigations.

*Goldman, supra* at 430 (emphasis original). No other court has adopted such a strict interpretation of the statute. Indeed, other cases not discussed by the court in *Goldman,* had established that the commission need not name every case to be investigated and every district in which the investigation was to take place. Such was the holding in United States v. Morse, 292 F. 273 (S. D.N.Y.1922). In that case, one Fletcher Dobyns was appointed a special attorney by the Attorney General to investigate persons engaged in the sale of stock of certain named corporations. The appointment letter specifically referred to the Southern District of New York and to the particular criminal statutes that were being violated. Mr. Dobyns did not limit his investigation to the companies and persons named but extended it to interrelated companies and persons having to do directly or indirectly with the sale of their stock. In upholding the right of Mr. Dobyns to appear before the grand jury in those cases, then district judge Augustus N. Hand concluded that:

> The letter of appointment would naturally relate to causes of action, criminal or civil, in which the United States was interested growing out of the relation. I see no reason for assuming, because on the face of the letter no interrelation is set forth, that it is not sufficiently specific. Indeed, it probably is as specific as was possible, if adequate power to deal with the situation without impairment of usefulness or unnecessary reduplication

of labor were to be given. Nor does the fact that proceedings may be taken in more than one district render the authority broader than the act of 1906 justifies, for no such limitation seems necessarily involved in the language of the act, and to impose it would cause unnecessary inconvenience in enforcing the law.

*Morse, supra* at 276. The test relied upon by Judge Hand was "whether the designation as counsel which he received from the Attorney General was *sufficiently specific." Id.* at 275 (emphasis added).

United States v. Huston, 28 F.2d 451 (N.D.Ohio 1928) is in accord with *Morse.*[22] In that case, the special assistant to the Attorney General received two commissions each of which specified several defendants "and others associated with them" to be investigated and which named the statutes violated. The first commission named the Western District of Missouri and the second the district of Minnesota as the places where the cases were pending. The special attorney was authorized to conduct legal proceedings in those two districts "or in any judicial district where the jurisdiction thereof lies." This last phrase became important since the indictment was returned in the Northern District of Ohio. The court, faced with the problem of interpreting what it called "this enigmatical phrase," concluded that the special attorney was not authorized to appear before the grand jury in Ohio for

> No charge brought against the defendants here [Ohio] by the bill under consideration has any dependent or ancillary connection with the alleged crimes in either Minnesota or Missouri. Here he [the Special Attorney] began de novo to assist in the development of a possible but indepen-

---

22. "We are inclined to agree with Judge Hand, in United States v. Morse (D.C.) 292 F. 273, 276, that a special assistant to the Attorney General may be 'specifically directed,' in satisfaction of the statute, to more than one district in the same designation, provided that such authorization is specific as to the cause of criminal action which may have ramifications in more than one district involving the same associated parties." United States v. Huston, 28 F.2d 451, 453 (N.D.Ohio 1928).

dent offense, whose existence depended upon facts peculiarly and particularly within the jurisdiction of this district alone, with which neither the Missouri nor Minnesota district had any concern whatever.

*Huston, supra,* 28 F.2d at 456. Thus, the fatal element in the *Huston* case was not that the commission failed to specify the Northern District of Ohio, but that the Ohio investigation was not "ancillary" to the properly authorized investigations in Missouri and Minnesota.[23]

Two cases hold that it is not necessary that the commission letter name the particular statutes on which the indictments were based. The Special Assistant to the Attorney General in United States v. Amazon Industrial Chemical Corporation, 55 F.2d 254 (D.Maryland 1931) received a commission which specified the particular case and several named defendants to be investigated. The commission did not refer to the particular federal statutes which were alleg-

edly violated. The court considered this a "mere matter of form and not of substance," and cited the principle that "even if the wrong statute is named in an indictment, the indictment may be good, provided the facts alleged therein constitute a crime." *Amazon, supra* at 256–57. United States v. Powell, 81 F. Supp. 288 (E.D.Mo.1948) is to the same effect and is also consistent with *Morse, supra.* In *Powell* the Special Attorney was commissioned to investigate irregularities in a certain general election in the Eastern District of Missouri. The indictment returned against the defendants involved the primary election and not the general election. Recognizing that the statute [then 5 U.S.C.A. § 310] was mainly for "the protection of the United States"[24] and should be given the meaning which is more helpful and practical in the dispatch of the government's business,[25] the Court concluded

that fraud in a Primary to select candidates for such General Election is

---

**23.** "We are unable to find this expression [or in any judicial district where the jurisdiction thereof lies] sufficient to fully clothe the special assistant, receiving such a commission, to conduct evidence before a grand jury in any other district than that specially named, *except* in proceedings instituted, to be ancillary to the case sought to be made in the main district." *Huston, supra* 28 F.2d at 455 (emphasis added).

**24.** The language originated in Shushan v. United States, 117 F.2d 110 (5th Cir.), cert. denied, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 (1941). Although the persons indicted in that case were not named in the commission of the special attorney the court held that the words of then 5 U.S.C. § 310 "do not require the naming of the persons or the particular cases to be prosecuted. Mail fraud cases in the Eastern District of Louisiana were specifically enough mentioned . . . ." *Id.* at 114.

**25.** This interpretation is found in United States v. Martins, 288 F. 991 (D.Mass. 1923). In that case the authority of a special assistant to the United States Attorney for the district of Massachusetts to present cases to a grand jury was upheld. The court concluded that "[t]he language of the statute is almost equally open to either interpretation; *i. e.,* that the direction must

be for the specific case, or for a specified kind of proceedings. This being so, the statute should be given the meaning which is the more helpful and practical in the dispatch of the government's business, especially as the meaning has been placed upon it by the Department concerned. As the Attorney General can unquestionably make case by case designations, to give the statute the narrower interpretation would result only in useless red tape." *Id.* at 992. Martins is not inconsistent with the analysis of the cases discussed *infra,* since it requires at a minimum a direction for a *specified* kind of proceeding. However the decision is of dubious precedential value for any proposition since the Court apparently misconstrued the intent of the statute [Rev.Stat. § 363 and now § 515(a)]. To the court in *Martins,* "[b]roadly speaking, the intention of the statutes appears to have been to authorize the Attorney General to designate *assistant United States attorneys* and to prescribe their duties." *Id.* (emphasis added). This is clearly a misinterpretation of the statutes. Their intent was to allow the Attorney General to appoint *special* attorneys. The theory that a special attorney could be considered an Assistant United States Attorney was squarely rejected in United States v. Crosthwaite, 168 U.S. 375, 18 S.Ct. 107, 42 L.Ed. 507 (1897).

not so far removed as to be an abuse of authority or complete deviation from authority, nor is the fact the indictment was returned under a statute other than the statute named in the commission grounds for dismissing the indictment.

*Powell, supra,* 81 F.Supp. at 291.

Perhaps the case which gives the broadest response to the question "was the special attorneys commission sufficiently specific," *see Morse, supra,* is United States v. Hall, 145 F.2d 781 (9th Cir. 1944), cert. denied, 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425 (1945). After a lengthy and thorough discussion of the power of the Attorney General to appoint special attorneys, District Judge Hall, in United States v. 1,960 Acres of Land, 54 F.Supp. 867 (S.D.Cal.1944) had concluded that the local district attorney must initiate and prosecute condemnation proceedings on behalf of the Government in order to give the court jurisdiction. The Ninth Circuit in *Hall* disagreed and issued a writ of mandamus directing Judge Hall to assume jurisdiction. The issue involved the setting up of a "lands division" office in the Southern District of California by the Department of Justice. Special Attorneys were assigned to the office and specifically directed to conduct certain "Lands Division" cases as may be assigned to them.[26] In holding that the special attorneys were authorized to conduct the proceedings, the court concluded

that such authorization need not be directed to specifically designated cases but may be designated and *limited descriptively* as was done in the instant case by the Attorney General when he authorized Mr. Brett and the attorneys under his immediate direction to act in the kind of cases, to wit, such *land cases* as from time to time shall be assigned to the Los Angeles Lands Division office.

*Hall, supra,* 145 F.2d at 785 (emphasis added). It should be noted that in *Hall* the local district attorney had agreed that the *specialized* work of the Lands Division could best be handled without his assistance. The result was consistent with the legislative history of now section 515(a) where Congress recognized the need for the appointment of special attorneys with "peculiar knowledge and skill."

For almost twenty-six years after the decision in *Powell, supra,* there were few significant cases in which the power of special attorneys to appear before grand juries was in issue.[27] This dormant period ended two months ago when in United States v. Williams, Docket No. 74 Cr. 47–W–1 (W.D.Mo. orders of 11/15/74 and 12/3/74) the court dismissed an indictment because of the failure of the Government to sufficiently respond to discovery orders entered by the court which related *inter alia* to the authority of certain "strike force" attor-

26. The commission read in part: "I have delegated to you, and I hereby specifically direct that you exercise, plenary authority to sign and file on behalf of the United States, any and all pleadings, briefs, papers or documents in the District Court in and for the Southern District of California which you may consider necessary or proper for the conduct of such Lands Division cases as have been, or may be in the future, placed and maintained under your supervision by the Department of Justice."

27. United States v. Morton Salt, 216 F.Supp. 250 (D.Minn.1962), aff'd, 382 U.S. 44, 86 S.

Ct. 181, 15 L.Ed.2d 36 (1965), merely recognized that the commission does not have to name every division within a judicial district where special attorneys are assigned. In Wall v. United States, 384 F.2d 758 (10 Cir. 1967), the court upheld the authority of special attorneys to assist in the *trial* of the case and noted that "[d]ecisions concerned with participation in grand jury proceedings by unauthorized persons are not applicable." *Id.* at 763 (footnote omitted). In United States v. Andreas, 374 F.Supp. 402 (D.Minn. 1974), the authority of the Watergate special prosecutor to sign an information was supported by *inter alia* section 515(a).

neys to present the *Williams* case to the grand jury.[28] After the *Williams* case was unofficially reported a number of defendants in this district and others, including *Crispino*, made motions similar to those in *Williams*.[29]

Williams was charged in a one count indictment with making a false entry in a record required to be kept by the labor union of which he was president, a violation of 29 U.S.C. § 439(c). The alleged violation took place in 1969, and since the indictment was not returned until 1974, an issue of pre-indictment delay was raised by the defendant.[30] At an evidentiary hearing held in July, 1974 in connection with several pending motions, the court, apparently *sua sponte*, questioned the authority of the strike force attorneys to appear before

the grand jury in the Western District of Missouri. Subsequent to that hearing the defendant made motions for dismissal based on the appearance of an unauthorized attorney before the grand jury.[31] Motions were also made pursuant to Rules 7 and 16 of the Federal Rules of Criminal Procedure for a bill of particulars and discovery relating to internal guidelines, agreements and memoranda of the Department of Justice as to the authority of the strike force attorneys to appear before the grand jury and the efforts made to secure approval from the Justice Department for the prosecution of Williams. On October 21, the court granted the motion for discovery and directed the material to be produced for its *in camera* inspection.[32]

28. An appeal has been filed in *Williams*, but argument to the circuit court has not yet been made.

29. Summaries of the two orders filed in the *Williams* case were reported in 16 Crim.L. Rptr. 2223–26 (Dec. 11, 1974). There are at least three other similar motions pending in this district and the Court has been informed that similar motions have been filed in several other districts. District courts in Florida, Nevada and California have, within the last two weeks, denied similar motions but no opinions were issued, only a brief order or an endorsement. An opinion was filed in United States v. Brodson, No. 74–Cr.–98 (E.D.Wis. January 31, 1975). Among the many motions raised in that case was a *Williams* type motion, which was denied by the Court. The Court noted that "[t]he sole issue is whether assistant attorney general Henry E. Petersen was authorized and empowered to commission the special attorney in this case. I conclude that he was." *Id.* at 14.

30. The summary of facts on the issue of pre-indictment delay in *Williams* indicated that special attorney DeFeo made two unsuccessful attempts to obtain permission from his superiors in Washington to indict Williams. *See* the Nov. 15, 1974 order at pages 19–21. The court concluded that "[w]hat has been briefly said in regard to those and the other circumstance clearly establishes that a substantial due process question of preindictment delay is presented in this case and that the material ordered produced may well contain evidence favorable to the defendant." *Id.* at 21.

31. After the July 22 hearing in *Williams*, his attorneys filed a motion to dismiss in which they argued that only the Department of Labor was the proper governmental authority to conduct the investigation. This position was subsequently modified and the objection made that it was the United States Attorney not a special attorney who should have appeared before the grand jury.

32. The order required the government to produce for the Court's *in camera* inspection: "Any Department of Justice guidelines, agreements, memoranda of understanding or regulations not published in the Code of Federal Regulations which touch upon: (a) The basic authority pursuant to statute of the special attorneys appearing in this case to represent the United States in the Western District of Missouri. (b) Their authority to appear before grand juries and otherwise to prosecute cases involving the statutory violation alleged in the indictment herein. (c) The relationship guidelines and division of authority between the purported authority of the special attorneys and the constitutional statutory or any other authority of the United States Attorney for the Western District of Missouri. (d) The legislative history of 28 U.S.C. §§ 509, 510, 515 and 543. (e) Each document or memoranda set forth in the Stipulation of July 22, 1974, pertaining to the "special attorneys'" efforts to secure authority from their superiors at the Department of Justice to prosecute the defendant in connection with the subject matters of this indictment. This request embraces any and all memoranda and rough notes made as a result of phone con-

In response to the court's order, the government took the position that the special attorney was properly authorized under section 515(a) and that any requests for purely internal documents of the Justice Department would violate the interests of confidentiality in law enforcement and the exercise of prosecutive discretion. The government also asked the court to reconsider its initial order, and stated that it might "suffer dismissal" of the case if the order was not modified. The court refused to modify its original order and on November 15, 1974 issued a lengthy opinion and order which gave the government ten additional days to comply with the order. When the government did not make an adequate response, the court issued an order on December 3, 1974 dismissing the indictment with prejudice.

The case at bar differs from *Williams* in several respects: (1) there are no issues involving pre-indictment delay; (2) questions concerning who actually signed the commission letter and whether internal Justice Department documents should be produced are not seriously pressed; [33] and (3) most important of all, the commission letters of the special attorneys in *Williams* differ markedly from the commission letter of Mr. Padgett. The commission letter set out in full in the *Williams* case authorized the special attorney [Mr. DeFeo] to assist in the trial of cases growing out of certain transactions named in the letter. The letter then specified over twenty different statutes which may have been violated. Included among the list was 29 U.S.C. § 439, the statute under which *Williams* was indicted. This court must respectfully disagree with any intimation made by the court in *Williams* in its analysis of section 515(a) and the cases construing that section (*see* the November 15, 1974 opinion in *Williams* at pp. 24–36), that the special attorneys in that case were not properly authorized to appear before the grand jury. Those commissions are consistent with the analysis of the commissions in the cases discussed *supra*, and were clearly "sufficiently specific" as called for by Judge Hand in *Morse, supra*.[34]

versations and face-to-face discussion. (f) Any and all other memoranda, correspondence and written actions taken thereon concerning requests for approval of prosecution of defendant for the offense purportedly stated in the written indictment." Paragraphs (a)–(d) related to the appearance of the strike force attorney while paragraphs (e) and (f) concerned preindictment delay.

33. At oral argument on this motion, Crispino's counsel agreed to accept the government's representation that Mr. Petersen signed the commission.

Crispino's initial motion, made prior to moving to dismiss under Rule 12(b)(2), was for particulars and discovery pursuant to Rules 7 and 16 of internal documents of the Justice Department. The language is almost word for word the language used in the *Williams* discovery order. The *Williams* decision was merely appended to the papers with no discussion of the distinguishing facts and issues in that case. A check on similar motions filed with other judges in this district shows a similar pattern. The cases decided prior to *Williams* which involved the authority of special attorneys to appear before grand juries do not discuss any need for discovery of internal Justice department

documents, for none was needed. The issue was resolved by examining the statutes, their legislative history, decisions construing them and the commission letters themselves. A motion pursuant to Rule 12(b)(2) as subsequently made by Crispino is sufficient to raise the issue of Mr. Padgett's authority and no discovery is needed. The court's discovery order in *Williams* appears to be influenced by the preindictment delay issue.

One further issue present in *Williams* but absent here is the propriety of the oath taken by the special atotrney. In *Williams*, Mr. DeFeo inserted additional wording into the oath himself. In the case at bar, the oath merely referred to the commission letter and incorporated it.

34. It is interesting to note that in the November 15, 1974 order in *Williams* at footnote 10, the court quoted a letter sent to Mr. DeFeo on August 2, 1974 from Acting Assistant Attorney General John C. Keeney and remarked: "If anyone is under the impression that no Attorney General would ever attempt to assume that Section 515(a) confers power and blanket authority to appoint a duplicate set of Department of Justice Special Attorneys to serve in the various judicial districts throughout the United

■ But what of the commission of Mr. Padgett in this case? Is it consistent with the intent of Congress in passing the act of 1906, with the cases construing that act, and with the practice of other Attorney Generals who have issued commissions to special attorneys? Is it "sufficiently specific"? This court concludes that it is not.

The first paragraph of Mr. Padgett's commission states:

The Department is informed that there have occurred and are occurring in the Southern District of New York and other judicial districts of the United States violations of *federal criminal statutes* by persons whose identities are unknown to the Department at this time (emphasis added).

The second paragraph appoints Mr. Padgett a special attorney to assist in the trial of and conduct proceedings in connection with the "aforesaid cases." But what are these "aforesaid cases"? The first paragraph says they are cases involving the violation of "federal criminal statutes." Can this be considered a "specific direction from the Attorney General as required by the statute"? Is this commission "sufficiently specific"? Clearly not. It is precisely the opposite. It is as broad and as vague as possible. Nowhere in the commission is there any attempt to give a description of the type of cases—such as "organized crime cases," or "Lands Division cases,"

or "tax fraud cases," etc.—which Mr. Padgett may be commissioned to investigate and present to grand juries.

■ The legislative history of section 515(a) and the cases analyzed in this opinion show that it is not necessary to specify in the commission letter all the defendants who may be indicted, or all the cases which are pending, or all the statutes which may be violated for the statute should be given an interpretation that is helpful to the prosecution of cases by the government. But the one element that is common to every case which has either upheld or dismissed challenges to the authority of special attorneys to appear before grand juries is that the commission letter at least described particularly the *type* of cases (e. g., "Lands Division" cases in United States v. Hall, *supra*) that the special attorneys were to present to grand juries.[35] That element is conspicuously missing in this case. Nowhere is there an attempt to conform to the intent of Congress in limiting the appearance of special attorneys before grand juries to "cases of particular importance" where those "specially or particularly qualified" by reason of "peculiar knowledge and skill" would be helpful to the prosecution of important cases by the government. Surely it is no argument to say that any violation of a "federal criminal statute" involves a case of particular importance where those with peculiar

States, one should read with interest Acting Assistant Attorney General Keeney's letter of August 2, 1974 to Mr. DeFeo, written after the question of Mr. DeFeo's authority in this case was raised." That letter is almost an exact duplicate of the letter sent to Mr. Padgett in the case at bar.

35. United States v. Twining, 132 F. 129 (D. N.J.1904) (specific case named); United States v. Rosenthal, 121 F. 862 (C.C.S.D. N.Y.1903) ("fraudulent importations of Japanese silks"); United States v. Virginia-Carolina Chemical Co., 163 F. 66 (M.D.Tenn.1908) (fertilizer trust cases); May v. United States, 236 F. 495 (8th Cir. 1916) (oleomargarine cases); United States v. Morse, 292 F. 273 (S.D.N.Y.1922) (sale of stock of certain named

corporations); United States v. Martins, 288 F. 991 (D.Mass.1923) (specific cases named); United States v. Huston, 28 F.2d 451 (N.D. Ohio 1928) (specific cases and statutes named); United States v. Goldman, 28 F.2d 424 (D.Conn.1928) (violations of the National Prohibition Act); United States v. Amazon Industrial Chemical Corporation, 55 F.2d 254 (D.Maryland 1931) (specific case named); Shushan v. United States, 117 F.2d 110 (5th Cir. 1941) (mail fraud cases); United States v. Sheffield Farms, 43 F.Supp. 1 (S.D.N.Y. 1942) (specific antitrust statutes named); United States v. Hall, 145 F.2d 781 (9th Cir. 1944), cert. denied, 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425 (1945) (Lands Division cases); United States v. Powell, 81 F.Supp. 288 (E.D.Mo.1948) (specific cases named).

knowledge and skill not possessed by the local United States Attorney and his assistants are needed to prosecute the case.[36]

The commission letter issued to Mr. Padgett is a bold assertion of authority by the Attorney General to appoint special attorneys in any case regardless of its importance and regardless of whether any particular skill or knowledge is required. If upheld it would allow these special attorneys to supersede the local United States Attorneys and their regular assistants, whose statutory duty for the last 186 years has been to prosecute all offenses against the United States in their districts, in any cases involving a violation of a "federal criminal statute." Congress never intended to give such a broad authority when it passed the Act of 1906 even if the statute be for the "protection of the United States," and no case construing that statute supports such a proposition.

Moreover, the practice of a number of Attorney Generals for at least 50 years had been to make the commission letter as specific as possible so as to comply with the intent of Congress. Such a longstanding policy of construction by a number of Attorney Generals cannot be overlooked. In response to inquiries made by this court, the attorney in charge of the "strike force" for this district furnished the court for its *in camera* inspection an internal Department of Justice memorandum of May 18, 1972, from Mr. Joseph Cella of the Criminal Division to Mr. Harold Koffsky, Chief of the Legislation and Special Projects Section of the Criminal Division. It was shortly after this memorandum was submitted that the Department changed the form of the commission letter from that such as given to Mr. DeFeo in *Williams*, to the type issued to Mr. Padgett.[37]

Undoubtedly, the Attorney General of the United States has a serious and difficult responsibility in combating "organized crime."[38] If he feels that the local United States Attorneys and their

36. There appears to be an internal controversy in the Justice Department as to whether the regular United States Attorney, or the strike force attorneys can do a better job in the struggle against "organized crime," with reports being circulated by both pro and anti strike force groups within the Justice Department. *See* N. Y. Magazine, Feb. 3, 1975 at p. 9.

37. The identity of the Justice Department official who made the decision to change the commission letter is not definitely known. In a letter to this court, William I. Aronwald, Attorney-in-Charge of the strike force in this district, stated: "I have been informed by Paul Walsh, a Department Attorney assigned to the Legislative Affairs Section of the Criminal Division that he has discussed this matter with Mr. Koffsky, who is the former Chief of the Legislative Affairs Section, and that to Mr. Koffsky's best recollection, the final decision to effectuate a change in the format of a letter was made by Henry Petersen, the former Assistant Attorney General in charge of the Criminal Division. It should be noted however, that Mr. Koffsky does not know whether Mr. Petersen discussed this matter with either the Deputy Attorney General or the Attorney General. In addition, I am informed by my superiors that they have no recollection as

to whether this decision was made by the Attorney General, Deputy Attorney General or Mr. Petersen."

38. One problem associated with prosecuting "organized crime cases" is deciding what in fact is an "organized crime" case. In New York State, where a statewide organized crime task force has been established by section 70–a of the Executive Law (McKinney's Consol.Laws, c. 18, 1972), one court has recently held that certain indictments must be dismissed because, *inter alia*, section 70–a is unconstitutionally vague in that it gives no definition of "organized crime." People v. Ron-Ore Soil Systems, Ind., 364 N.Y.S.2d 310 (Sup.Ct. Onondaga County, Jan. 21, 1975). The court noted that "Conspicuously absent from § 70–a, is a comprehensible definition of "organized crime" and an ascertainable standard that limits the investigative and prosecutorial scope of OCTF's [the New York Organized Crime Task Force] authorized activities." *Id.* at 6.

In the House Report on the Organized Crime Control Act of 1970, 84 Stat. 922, several congressmen in expressing dissenting views noted: "[O]ne searches the bill in vain for a definition of "organized crime." In a criminal statute where the term "organized crime" is an operative device, it is not defined. When asked about the omis-

regular assistants cannot be as effective in the prosecution of "organized crime" cases as special attorneys, then he should be able to appoint special attorneys with particular knowledge and skill to prosecute those cases and present them to the grand jury.[39] That is precisely why Congress passed what is now section 515(a). But that power is limited to such specialized areas as cases against "organized crime" and was never meant to extend to the prosecution of *any* case which involved a violation of "a federal criminal statute." If the Attorney General felt that the commissions to his special attorneys would be unduly restrictive if they were limited to "organized crime cases" or "Lands Division cases," etc., then he should have asked Congress to amend section 515(a). He had no authority to issue a broad roving commission such as the one given to Mr.

---

sion, the drafters explained that it was impossible to define, but everybody knew what it was." H.R.Rep.No.91–1549, 91st Cong.2d Sess.

In the Statement of Findings and Purpose of the Organized Crime Control Act of 1970, organized crime was described as follows: The Congress finds that (1) organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption; (2) organized crime derives a major portion of its power through money obtained from such illegal endeavors as syndicated gambling, loan sharking, the theft and fencing of property, the importation and distribution of narcotics and other dangerous drugs, and other forms of social exploitation; (3) this money and power are increasingly used to infiltrate and corrupt legitimate business and labor unions and to subvert and corrupt our democratic processes; (4) organized crime activities in the United States weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens; and (5) organized crime continues to grow because of defects in the evidence-gathering process of the law inhibiting the development of the legally admissible evidence necessary to bring criminal and other sanctions or remedies to bear on the unlawful activities of those engaged in organized crime and because the sanctions and remedies available to the Government are unnecessarily limited in scope and impact.

It is the purpose of this Act to seek the eradication or organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.

39. The use of "strike force" attorneys to prosecute organized crime cases has grown continually since the concept was initiated in 1967. The growth of the "force" is described in each of the Annual Reports of the Attorney General for the years 1967–73. In the Hearings before the Subcommittee on Criminal Laws and Procedures of the Committee on the Judiciary, on the Organized Crime Control Act of 1970, 91st Cong., 1st Sess. (1969) at p. 110, then Attorney General Mitchell described the "strike force" as follows:

The strike force concept is bottomed on the view that a highly effective investigative effort can be achieved if investigators from different government agencies work together as a team. A strike force composed of experienced supervisory investigators and attorneys, concentrating their efforts on a single, identified Cosa Nostra family, can accomplish more than the loosely coordinated effort of the different agencies operating through routine and established practices. Central to the strike force design is the concept of mutual planning, based on combined intelligence and pooled experience. Participants in the project have the dual function of participating in the formulation of the group's strategy and coordinating the implementation of that strategy by their agency. In effect, each participant is a conduit for the dissemination of intelligence information to and from his agency for the other participants. Additionally, the agency representative insures that the group acts in compliance with the internal regulations of his agency. It is of paramount importance to the project that assigned members must be of supervisory level. Each participant must be able to secure the unqualified cooperation of his agency's local office, and to make or obtain high level decisions on the conduct of investigations by local or field personnel of his agency.

Padgett with its complete lack of any *specific* direction.

It is of little consequence that the indictment presented by Mr. Padgett to the grand jury concerned an "organized crime" case, for no mention of "organized crime" cases was made in his commission. It is the assertion of authority by the Attorney General in issuing the broad and sweeping commission that cannot stand.

This court is aware of the impact this decision may have upon the special attorneys already designated by the "blanket commissions," and the cases already presented to grand juries by those attorneys. However, Congress has placed certain limitations and requirements on the appointment of special attorneys, and these conditions have not changed in almost seventy years despite an attempt at amendment of the Act.[40] The intent of Congress cannot be changed by the unilateral act of the Attorney General. The importance of requiring a department to adhere to the letter of the enabling legislation is basic to the preservation of the balance between the branches of our government. Recent events have shown that abuse results when that rule is not observed.[41]

■ One final question must still be answered—does the unauthorized ap- pearance of Mr. Padgett before the grand jury require the dismissal of the indictment? A long line of cases supports the policy as expressed in United States v. Edgerton, 80 F. 374 (D.Montana 1897):

> There must not only be no improper influence or suggestion in the grand jury room, but, as suggested in Lewis v. Commissioners, 74 N.C. 194, there must be no opportunity therefor. If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury?

*See* United States v. Carper, 116 F. Supp. 817 (D.D.C.1953); United States v. Bowdach, 324 F.Supp. 123 (S.D.Fla. 1971); United States v. Isaacs, 347 F. Supp. 743 (N.D.Ill.1972). *See also* United States v. Daneals, 370 F.Supp. 1289 (W.D.N.Y.1974). *Compare* United States v. Rath, 406 F.2d 757 (6th Cir.), cert. denied, 394 U.S. 920, 89 S.Ct. 1196, 22 L.Ed.2d 453 (1969). Clearly, the list of persons permitted to appear before grand juries by Rule 6(d) of the Federal Rules of Criminal Procedure does not include unauthorized government attorneys.

40. An attempt to amend then 5 U.S.C. § 310 [now 28 U.S.C. § 515(a)] so as to eliminate the condition "when specifically directed by the Attorney General" was made by introducing legislation in 1945. The Senate Bill, S.1519, 79th Cong., 1st Sess. (1945) was introduced by Sen. McCarran, and on Oct. 26, 1945 it was referred to the Committee on the Judiciary. The Bill was never reported out of the committee. The full text of the proposed bill provided:

A BILL. To amend the Act authorizing the commencement and conduct of legal proceedings under the direction of the Attorney General.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the Act entitled "An Act to authorize the commencement and conduct of legal proceedings under the direction of the Attorney General," approved June 30, 1906 (34 Stat. 816; 5 U.S.C. 310) be, and it hereby is, amended to read as follows:

"That the Attorney General or any officer or attorney of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provisions of law may conduct any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought."

The House bill, H.R.4470, was identical to the Senate bill.

41. The fact that Congress has approved budgets of the Justice Department which indicate that a number of strike forces have been set up is irrelevant. Congress, of course, presumes that its authorization has been properly implemented.

The indictment must be dismissed. So ordered.

### MEMORANDUM DECISION ON MOTION FOR RECONSIDERATION

The indictment in this case was dismissed in an opinion and order dated February 13, 1975. The government now asks for reconsideration (reargument) of that decision and reinstatement of the indictment in the light of several recent decisions in this Circuit. *See* United States v. Albanese, 74 Cr. 814 (E.D.N.Y. February 19, 1975); United States v. Brown, 389 F.Supp. 959 (S.D.N.Y., 1975); Sandello v. Curran, M–11–18 (S.D.N.Y. February 27, 1975); In re Langello, 74 Cr. 638 (E.D.N.Y. February 27, 1975); United States v. Jacobson, 74 Cr. 936 (S.D.N.Y. March 3, 1975). *See also* In re Persico, 75 Civ. 96 (E.D.N.Y. February 7, 1975).

The defendant has opposed the motion as untimely under local rule 9(m). It would perhaps be the better part of valor to take refuge in that rule and decline to entertain the motion. I have chosen however to reconsider my opinion in the light of my brothers' decisions. I still adhere to the original opinion.

■ The government for the first time has brought to my attention that there are detailed procedures internal to the Department of Justice which coordinate the work of United States Attorneys and "Strike Force" Attorneys. However neither that disclosure nor a careful consideration of the broad powers vested in the Attorney General pursuant to 28 U.S.C. §§ 509, 510 have persuaded me that the authorization given to Mr. Padgett was proper. These sections were given due consideration at the time of preparation of the earlier decision; no reference to them was made since the specific statute 28 U.S.C.A. § 515(a) controlled and in effect limited or modified the broad powers vested in the Attorney General by §§ 509, 510. Statutory construction would indicate that the specific statute rather than the general statute controls.

■ Admittedly time and conditions have changed from 1906, especially in the area of organized criminal activity. This gives the Attorney General no excuse for circumventing enabling legislation no matter how sincere his intentions.

Mr. Justice Brandeis in Olmstead v. United States, 277 U.S. 438, 479, 48 S. Ct. 564, 573, 72 L.Ed. 944 (1928) expresses my sentiments with respect to this argument:

"Experience should teach us to be most on our guard to protect liberty when the Government's purposes are beneficent. * * * The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding."

Several of my brothers' opinions indicate that the authorization letters such as Mr. Padgett's which are now issued to "Strike Force" Attorneys can be "comfortably" read to include "specific directions" from the Attorney General as required by section 515(a). They are apparently so construed because the authorization letters direct those attorneys to conduct *any kind* of legal proceedings. No previous court has so construed the letters unless there was a sufficient specific authorization with reference to a definable subject matter. Whether such specific authorization could be found in Mr. Padgett's letter was the very question which had to be answered. My conclusion in this case was that the authorization to conduct *any kind* of proceeding in *any case* involving a violation of a *federal criminal statute* was not sufficiently specific to satisfy the *statute*.

My brothers have chosen to ignore the fact that the Attorney General in 1945 was "uncomfortable" enough with the "specifically directed" language of section 515(a) to submit legislation to the Congress which had as its sole purpose the elimination of the "when specifically directed" requirement. *See*

*Crispino* note 40. The legislation died in committee. This plain though tacit disapproval of any dilution of the statutory requirement by the only body that can delineate the powers of the Attorney General was not mentioned in any of their opinions.

I must assume that the internal memorandum of the Justice Department on the question of authorization (*See Crispino* at 779) was not asked for or read by my brothers. Knowledge of its contents is incompatible with a finding that section 515(a) can be "comfortably read" to encompass the Padgett type authorization.

 I must also disagree with the portrayal by my colleagues of the dire consequences that could result if "Strike Force" Attorneys are found to have been operating without proper authorization since 1972. The spectre of convictions being overturned and racketeers let loose is, in my opinion, illusory. A motion to dismiss an indictment based upon the presence of an unauthorized person before the grand jury must be made prior to trial or it is waived. *See* Advisory Committee Note To Rule 12 of the Federal Rules of Criminal Procedure.[1]

Much has been made of the fact that Presidents have sent messages to Congress stressing the need and importance of combatting organized crime and that the strike forces have received much publicity before, and budget approval by, Congress. Yet section 515(a) remains in effect as it was enacted in 1906. Such messages and events do not amend laws. Perhaps I have not breathed enough of the air in the different atmosphere that my brothers assert prevails today. Be that as it may I continue to believe in the principle that Congress is the body that must change section 515(a) if that is what is necessary to give the "Strike Force" Attorneys the unfettered discretion they may justifiably need to combat organized crime.

"In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher for good or ill it teaches the whole people by its example." Brandeis, J., in *Olmstead, supra* at 485 of 277 U.S., at 575 of 48 S.Ct.

The motion is denied.

So ordered.

---

[1] It should also be noted that those recent opinions which have dealt with the problem of witnesses who refuse to answer questions before grand juries because of the presence of "Strike Force" Attorneys have not considered whether such persons prior to indictment have standing to raise such an issue. *Cf.* United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) ; United States ex rel. Rosado v. Flood, 394 F.2d 139, 141 (2d Cir.), cert. denied, 393 U.S. 855, 89 S.Ct. 111, 21 L.Ed.2d 124 (1968) ; Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1973) ; In re Grand Jury Proceedings, 486 F.2d 85 (3d Cir. 1973).