## UNITED STATES v. HUSTON et al.

District Court, N. D. Ohio, W. D. June 26, 1928.

No. 5343.

Sylvester R. Rush, Sp. Asst. Atty. Gen., and Harry G. Levey, Asst. U. S. Atty., of Toledo, Ohio, for the United States.

Tracy, Chapman & Welles and Brown, Hahn & Sanger, all of Toledo, Ohio, for defendants.

KILLITS, District Judge. ▮ The court is considering pleas in abatement in behalf of the several defendants to this case, who attack the regularity of proceedings in the grand jury because of the alleged unauthorized appearance, in connection with the return of the indictment herein, before that body, of Sylvester R. Rush, Special Assistant to the Attorney General. Mr. Rush, as Special Assistant to the Attorney General, signed the indictment in common with Assistant District Attorney Levy of this district. The bill is in seventeen counts, under section 338, tit. 18, USCA (section 215, Criminal Code), for use of the mails in promoting fraudulent enterprises in connection with certain corporate operations, including those of the Chicago, Southern Minnesota, and Kansas City Joint-Stock Land Banks. There is involved, by the appearance of Mr. Rush in the proceedings, construction of sections 310 and 315, tit. 5, USCA, and a consideration of the place of the grand jury in Federal criminal administration. The pleas raise a substantial issue, and one not a mere defect of form cured by section 556, tit. 18, USCA (R. S. 1025), as one not tending to the prejudice of the defendants. United States v. Heinze (C. C.) 177 F. 770.

In a charge to the grand jury some years ago, in this court, we said, "You are organized under the common law, with all the characteristics and functions which pertain to such an organization." In its inception, the grand jury was an independent branch of the court, whose inquiries were conducted within its own membership, and in the absence of any person not regularly drawn to participate therein as a member thereof. Its origin is not obscure, and the occasion therefor, a matter of historic knowledge, was to provide from the body of the people an instrumentality by which the liberties of citizens were safeguarded against the arbitrariness of government. For convenience, however, and to secure an observance of the formalities of procedure, an innovation was soon established upon the original functioning of grand jury inquisitions whereby a representative of the crown, filling the office of prosecutor, was permitted "to be present during the sitting of the grand jury, to conduct evidence on the part of the crown." 1 Chitty, Criminal Law, p. 317. It should be noted that all the attorney for the crown was permitted to do was to "conduct evidence." It is still not permissible, in the federal practice, for the prosecutor to otherwise participate in the jury's proceedings. In this connection it might be said that we are not disagreeing with the conclusions of Judge Hand, in United States v. Rintelen (D. C.) 235 F. 787. Judge Hand, examining the facts, found that the conduct of the district attorney was within the limiations of Justice Field's charge on this subject in 2 Sawy. 667, Fed. Cas. No. 18255, and as approved in United States v. Cobban (C. C.) 127 F. 713. The district attorney's power to "conduct the evidence" is not limited to mere interrogations, but involved is the right, if called upon, to advise how the facts elicited meet the applicable law, provided that he does so judicially. This is a privilege which we have frequently presented in instructions to our own grand juries. Its exercise demands restraint and tact; to go further, to press for a bill or to exhibit partisanship against the subject of inquiry will gravely affect the stability of the result. At the time of the adoption of the Constitution, in 1787, with a Fifth Amendment forbidding the holding of any person to answer to an infamous crime unless on presentment or indictment of a grand jury, it was this common-law organization which was meant, in the functioning of which none but members participated, except for the assistance of the prosecutor in the taking of evidence, but not to be present during either the deliberations of the body upon the case or the balloting of the members to decide whether or not a bill of indictment should be returned.

From 1787 to the present time, therefore, a federal grand jury has been a body organized and functioning as by the common law at the date of the adoption of the amendment; and it seems reasonably clear that no power abides in the Congress to affect or modify the integrity and independence of the

body as established. There is no reason in our judgment to abate the jealous consideration for the rights and liberties of the individual which directed the institution of a grand jury at the beginning, and which later impelled the adoption of the amendment. It is yet entirely consonant with the spirit of our institutions that every reasonable precaution be taken to secure the individual, whose acts are under the scrutiny of a select body of his fellow citizens, from influences to which the grand jury may be subjected, even unconsciously or unintentionally, by the government through its chosen prosecuting representative. It is not to underrate the intelligence or independence of a twentieth century grand jury to suggest that some impression not conducive to a thoroughly dispassionate consideration of a charge might result from the presence, as a conductor of the evidence, of one who is seen to be the special representative of the Attorney General, however decorous, prudent, and fair that personage may attempt to be. This subject was well considered by Judge McCall in United States v. Virginia-Carolina Chemical Co. (C. C.) 163 F. 66, 75, whose observations thereon are worthy of note in the instant case. The general proposition that the Fifth Amendment makes necessary a finding following usage and mode of procedure established in 1787 is, for the purposes of this decision, sufficiently considered in United States v. Welles (D. C.) 163 F. 313, and Renigar v. United States (C. C. A.) 172 F. 646, 26 L. R. A. (N. S.) 683, 19 Ann. Cas. 1117, with the citations made in these cases. Grand jurors are accustomed to the presence of a local prosecutor to assist in the development of facts, and are not slow to act with a proper independence against him; but, when it is seen that the government is moved to bring into the proceedings a special representative of the executive branch, the pending charge may receive, in the minds of the jury, a particular emphasis which tends to sway judgment unconsciously.

From the beginning, evidence might be conducted in the grand jury by the Attorney General, with operative functions in every district in the country, by a district attorney of the appropriate district, and by deputies of these officers, who, by statute, severally function as locum tenens. In United States v. Rosenthal (C. C.) 121 F. 862, it was held that these officers only, including their regular deputies only, were so qualified, and that no such authority abided in the personage then known as a special assistant to the Attorney General. While the authority of this

case was subsequently disputed, it was generally regarded as conclusive; and there can be little question, going to the proceedings in Congress to which we may refer (U. S. v. Toledo Newspaper Co. [D. C.] 220 F. 458, 477, and cases cited), that this decision was the genesis of the Act of June 30, 1906, now appearing as section 310, tit. 5, USCA, which reads as follows:

"The Attorney General or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provision of law, may, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought."

This statute is not quite clear as to one feature not specially important here—i. e., whether an officer, per se, of the Department of Justice, needs special direction respecting appearance in a district—but it is quite certain that such a functionary as Mr. Rush is within its provisions. We think that the qualification or limitation, "when thereunto specifically directed by the Attorney General," applies only to "any attorney or counselor specially appointed," etc. These are not strictly officers of the Department such as are Assistant Attorneys General and the Solicitor. United States v. Rosenthal, and United States v. Heinze, supra. We are inclined to agree with Judge Hand, in United States v. Morse (D. C.) 292 F. 273, 276, that a special assistant to the Attorney General may be "specifically directed," in satisfaction of the statute, to more than one district in the same designation, provided that such authorization is specific as to the cause of criminal action which may have ramifications in more than one district involving the same associated parties.

Section 315, tit. 5, USCA, is also involved in the instant controversy. It reads:

"Every attorney or counselor who is specially retained, under the authority of the Department of Justice, to assist in the trial of any case in which the government is interested, shall receive a commission from the head of such department, as a special assistant to the Attorney General, or to some one of the district attorneys, as the nature of the appointment may require; and shall take the oath required by law to be taken by the district attorneys, and shall be subject to all

the liabilities imposed upon them by law. Foreign counsel employed by the Attorney General in special cases shall not be required to take the oath required by this section."

In the case of an officer of the Department, one commission as such and a qualifying oath taken before assuming the duties of the office is sufficient for all subsequent activities, whether regularly pertaining to the office or assumed by special direction, wherever undertaken; but, if we are to hold with United States v. Rosenthal, and United States v. Heinze, as we think we should, that a special assistant to the Attorney General is not an officer, then as to every special direction this section applies. The special direction is, in fact, the commission.

█ The provisions of these sections control the situation here; and through them alone Mr. Rush, Special Assistant to the Attorney General, derived whatever authority he possessed in appearing before the grand jury and in signing the indictment herein. Because these statutes are designed to enlarge the list of persons who may appear before a grand jury representing the government to function only within the limits imposed upon the Attorney General or upon a district attorney or a deputy of either, they should be strictly construed, following familiar principles of interpretation, and strictly followed.

Under section 310, therefore, Mr. Rush, to be qualified, must have been "specially retained under the authority of the Department of Justice" under some provision of law, and must have been specifically directed by the Attorney General to appear before the grand jury returning this bill to perform duties pertaining to this case, and, under section 315, he must have received a commission therefor from the Attorney General; and as a necessary completion of his qualification it must appear that, as special assistant to the Attorney General, he had taken the oath required by law to be taken by district attorneys, prior to his appearance before our grand jury. We have no doubt that, had he qualified upon his special commission, if any, under the provisions of section 315, his failure to exhibit an exemplification of this qualification prior to his appearance before the grand jury would not alone sustain a plea in abatement under the curative section already cited. An exhibit thereof to the court subsequent to the return of the indictment would be sufficient, but we must regard a specific direction by the Attorney General to participate in the conduct of grand jury proceedings in this case, issued in advance of such appearance, to be essential thereto.

This brings us to the facts relied upon for qualification alleged to be within the provisions of section 310, and thus conferring upon him the authority which he attempted to exercise. There are exhibited two commissions, which were not filed with this court until more than three months subsequent to the return of the indictment. Barring a few differences, subsequently to be noted, a quotation from one will suffice for both. Under date of December 17, 1926, Mr. Rush, who had been for many years a special assistant to the Attorney General, received a designation in the following language:

"Honorable Sylvester R. Rush, Special Assistant to the Attorney General, Omaha, Nebraska. Sir: You are hereby appointed a special assistant to the Attorney General of the United States, under the authority of the Department of Justice, in the case of United States v. Walter Cravens, Guy Huston, R. P. Cravens, R. H. Cravens, A. B. Todd, R. W. Street, and others associated with them, charged with violation of sections 37 and 215 of the Penal Code, and section 31 of the Federal Farm Loan Act, pending in the Western District of Missouri; and in that connection you are hereby authorized and directed to conduct in the Western District of Missouri or in any judicial district where the jurisdiction thereof lies, any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys are authorized by law to conduct.

"You are to serve without compensation other than the compensation you are receiving under your appointment dated March 31, 1923, but will be allowed your actual expenses of travel and subsistence, subject to law and regulations, when absent from headquarters, Omaha, Nebraska. Such expenses will be paid from the appropriation for 'pay of Special Assistant Attorneys, U. S. Courts.'

"You should execute the oath of office.

"Respectfully,

"[Signed] John G. Sargent,

"Attorney General."

The second commission bears the same date and is in identical language, except that, in addition to Guy Huston, specifically named in the Missouri commission, John E. Huston and Glenn W. Gold are mentioned as possible defendants, and this specific designation is for the district of Minnesota. It is to be noted that none of the remaining defendants herein, Schee, Boyles, Sigler, or Smith, is specifically named; and, if either is effective in this district respecting these last-named defendants, it is because each of these com-

missions, after designation of the parties supposed to be implicated in the grand jury investigation proceedings, suggests that the named parties may have others "associated with them," whose names were not available to be included specifically. We are not inclined to doubt that a special commission, which, after designation of certain names of supposed offenders, says in that connection, "and other persons associated with them," would be sufficient to permit an indictment to run, in any district to which the commission might be applied, against unnamed individuals, whose connection with the alleged offenses should develop during the grand jury inquiry. The proof before us shows that Mr. Rush qualified under both of these commissions by taking the necessary oath, separately as to each, required by section 315. As we have noted, not until after the attacks upon the authority of Mr. Rush to appear before the grand jury were made, first by motions to quash, and subsequently by pleas in abatement, in behalf of all of the present defendants, were evidences of these purported authorizations filed in this case, or even brought to the attention of the court.

█ We must consider that, under the circumstances under which they were made, interlocutory pleadings under consideration were filed in time. Plea in abatement was proper practice. May v. United States (C. C. A.) 236 F. 495. Upon the exhibit of this purported authority, supplemental pleas were filed and demurrers were entered thereto by the United States, pending the consideration of which a showing was made of various somewhat informal attempts at authorization in connection with the proposed investigation in this district, which, in the opinion of the court, are clearly insufficient to strengthen the government's resistance to the pleas. The most important of these is a letter from an Assistant Attorney General authorizing Mr. Rush to proceed to this district to investigate supposed offenses cognate to those alleged to have been committed within the districts of Minnesota and Western Missouri. With no fair regard to proper practice under section 310, or, indeed, having respect to the practice of Mr. Rush himself, in matters of designation in past years for other districts, as shown upon the record before us, can these, singly or in the aggregate, be held to make up a special commission for this district, even in connection with the exhibited special commissions for the western districts named. This is not because they were signed by an Assistant Attorney General, which would be sufficient, under the authority of May v. United States, supra, even for a formal special commission, but because they evidently deal with routine administration of the Department of Justice.

For many years Mr. Rush appears to have been under regular annual retainer, in the form of salary, as special assistant to the Attorney General, and we are shown that, hitherto, for any particular district into which he was about to exercise his retainer, it was his practice, not only to obtain a special direction in the form used in the Missouri and Minnesota instances, but to take a special oath applicable to each designation.

In the matter before us, the propriety of his appearance must be established, if at all, upon the Missouri and Minnesota commissions and the oaths of office taken by him under each, for he never took an oath specially and particularly applicable to this district. As indicated, these western designations are in form as adopted by Department practice in other situations of the same general character. The practice seems to have been to name certain supposed offenders, and to include unnamed possible associates; to state the sections of the Penal Code supposed to be involved; to designate the special district in which the special assistant is to enter; then to proceed with this enigmatical phrase, "or in any judicial district where the jurisdiction thereof lies." If by virtue of his Missouri and Minnesota designations, or both, Mr. Rush was qualified to conduct evidence before our grand jury, it is because of the inclusion in these commissions of this phrase. What does it mean? What is the antecedent of the adverb "thereof" following the word "jurisdiction"? We are unable to find this expression sufficient to fully clothe the special assistant, receiving such a commission, to conduct evidence before a grand jury in any other district than that specially named, except in proceedings instituted, to be ancillary to the case sought to be made in the main district. No other district than that of the Western district of Missouri has any jurisdiction of proceedings about to be instituted therein except by way of assistance thereto. "Legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates" in some other district, may be necessary as ancillary to the proceedings in the main district, and for such the authorization might be complete; but we think that it is strained construction of a commission such as this to assume that in this district Mr. Rush had as full and complete authority as that given to him by it in the Missouri district. He him-

self deemed it necessary, before he could proceed either in Missouri or Minnesota, to obtain special authority for each. That he should have done for this district, for no charge brought against the defendants here by the bill under consideration has any dependent or ancillary connection with the alleged crimes in either Minnesota or Missouri. Here he began de novo to assist in the development of a possible but independent offense, whose existence depended upon facts peculiarly and particularly within the jurisdiction of this district alone, with which neither the Missouri nor Minnesota district had any concern whatever. Some of the evidence, useful here, might travel over the same lines as that appropriate to either of the districts for which he received a special designation; and some of the parties alleged to be offenders in those districts may have been connected with similar crimes here; but no case was complete here without recourse to proof which only could be of transactions exclusively within our jurisdiction.

It needs no further exposition to show that Mr. Rush's qualifications for this district in the instant case were not established by the special commission for either the Minnesota or Missouri district, or both, even though these may be held to cover otherwise the activities herein of any or all of the defendants herein named. The proper and only sufficient practice under section 310, in our judgment, was for Mr. Rush to obtain for the Northern district of Ohio the same special commission which he sought and obtained for those districts.

We must hold, therefore, that the pleas in abatement are well taken; that therefore the indictment herein should be set aside. In order that the practice, acceptable within this district, may be established, we direct, with the concurrence of our colleagues, which we understand we have, the following procedure under sections 310 and 315, namely: The procurement by the special assistant to the Attorney General of a special commission directed for the Northern district of Ohio, substantially of the tenor of that obtained by Mr. Rush for the Western district of Missouri, herein quoted, with a special oath of office indorsed thereon, or attached thereto, to be filed with the court prior to the appearance of such special assistant to the Attorney General before the forthcoming grand jury, the same to designate at least one supposed offender, with unnamed associates, if any, and a reference to the criminal statutes supposed to have been violated.

A second special assistant to the Attorney General, one Dodds, also took part in our grand jury proceedings in this case. No necessity exists to discuss whether his authorization was sufficient, for clearly the proceedings before the grand jury were vitiated by the unauthorized appearance therein by Mr. Rush.

Other contentions are before the court in behalf of the several defendants which need no disposition, for they fall, to the advantage of the several defendants, because of the conclusions at which we have arrived in the foregoing.