UNITED STATES of America
v.
Salvatore **BADALAMENTI** et al.,
Defendants.

UNITED STATES of America
v.
Austin **CASTIGLIONE** et al.,
Defendants.

UNITED STATES of America
v.
Michael **SCIARRA** et al.,
Defendants.

Crim. Nos. 627–73, 74–506, 74–222.

United States District Court,
D. New Jersey.

April 15, 1975.

Jonathan L. Goldstein, U. S. Atty. by Joseph L. Cranwell, Richard D. Gregorie, Daniel A. Williamson, and Robert G. Clark, Special Attys., Dept. of Justice, Strike Force, Newark, N. J., for the United States.

Richard Newman, Newark, N. J., for defendant Badalamenti.

Seymour Pollack, pro se and Lawrence A. Whipple Jr., Newark, N. J., for defendant Pollack.

Ralph Fucetola, III, North Arlington, N. J., for defendant Pedley.

Maurice M. Krivit, Jersey City, N. J., for defendant Musto.

Daniel E. Isles by Harvey Weissbard, Montclair, N. J., for defendant, Maugere.

## OPINION

LACEY, District Judge:

This matter is before the court in United States v. Badalamenti, Crim. No. 627–73, on motions of the defendants Badalamenti, Pollack and Pedley for dismissal of the indictment returned against them on October 25, 1973. The defendants urge that the Special Attorneys who presented the matters to a Federal Grand Jury were acting without statutory authority, and as such were unauthorized persons appearing before a Grand Jury within the meaning of Fed. R.Crim.P. 6(d). Additionally, the defendants, in support of their motions, seek particulars and other discovery similar to that ordered by United States District Judge Oliver in United States v. Williams, 65 F.R.D. 422 (W.D.Mo., 1974), the case which sparked a plethora of motions challenging the authority of Strike Force attorneys both in this District and throughout the country.[1]

---

1. There is no need for discovery beyond that which the defendants have received. It would appear that the only documents relevant to the issue are the letters of appointment, two inter-departmental documents relating to Mr. Clark, Order No. 43170 relating to Strike Force Guidelines, and an inter-departmental memorandum dated May 18, 1972 from Mr. Cella to Mr. Koffsky.

All but the latter document have been reviewed by defense counsel. The Cella memorandum is irrelevant to the issues presented herein, see *infra* p. 814, and is not relied upon by the Court.

The Court is of the view that no further discovery is required and accordingly defendants' motions, insofar as they seek information beyond that already furnished by the Special Attorneys, are denied.

Also before the court are motions filed by defendant Maugere in United States v. Castiglione, Crim. No. 74–506, and defendant Musto in United States v. Sciarra, Crim. No. 74–222, for dismissal of the indictments returned against them on grounds identical to those raised in United States v. Badalamenti.

In Badalamenti, the movants, along with others, are charged in Count One with conspiring to commit certain offenses involving the fraudulent sale of securities and in subsequent separate counts with certain income tax violations.

These matters were presented to the Grand Jury by Messrs. Robert G. Clark, Liam S. Coonan and Daniel A. Williamson, all Special Attorneys with the United States Department of Justice. Messrs. Coonan and Williamson were assigned to the Organized Crime and Racketeering Section of the Criminal Division (hereinafter sometimes referred to as the Strike Force). Mr. Clark was assigned to the Criminal Fraud Section.

The letters of appointment of the three are identical in content. They read as follows:

The Department is informed that there have occurred and are occurring in the District of New Jersey and other judicial districts of the United States violations of federal criminal statutes by persons whose identities are unknown to the Department at this time.

As an attorney at law you are specially retained and appointed as a Special Attorney under the authority of the Department of Justice to assist in the trial of the aforesaid cases in the aforesaid district and other judicial districts of the United States in which the Government is interested. In that connection you are specially authorized and directed to file informations and to conduct in the aforesaid district and other judicial districts of the United States any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized to conduct.

Your appointment is extended to include, in addition to the aforesaid cases, the prosecution of any other such special cases arising in the aforesaid district and other judicial districts of the United States.

You are to serve without compensation other than the compensation you are now receiving under existing appointment.

Please execute the required oath of office and forward a duplicate thereof to the Criminal Division.

The letters of Messrs. Coonan and Williamson are signed by Henry E. Petersen, then Assistant Attorney General. The letter of Mr. Clark is signed by Joseph T. Sneed, then Deputy Attorney General.

In United States v. Castiglione, the indictment, returned on December 2, 1974, alleges violation by the five named defendants of the conspiracy statute, 18 U.S.C. § 371, and, as to certain of the defendants, violations of the counterfeiting and forgery statutes, 18 U.S.C. §§ 471, 472. That matter was presented to the Grand Jury by Mr. William M. Arnold, a Special Attorney with the Organized Crime and Racketeering Section of the Criminal Division, United States Department of Justice (the Strike Force). Mr. Arnold's letter of appointment is identical to Mr. Williamson's.

In United States v. Sciarra, defendant Musto was convicted of violations of 18 U.S.C. §§ 371, 892 and 2. Immediately prior to trial, an oral motion was made, unsupported by briefs or affidavits, urging that the appearance of Mr. Gregorie, the Special Attorney assigned to the Newark Strike Force, in present-

ing that matter to a Grand Jury, was unauthorized under Fed.R.Crim.P. 6(d).

Mr. Gregorie's appointment letter reads as follows:

Mr. Richard D. Gregorie
Criminal Division
Department of Justice
Washington, D. C.

Dear Mr. Gregorie:

As an attorney and counselor at law you are hereby specially retained and appointed as a Special Attorney under the authority of the Department of Justice to assist in the trial of the case or cases growing out of the transactions hereinafter mentioned in which the Government is interested. In that connection you are specifically directed to file informations and to conduct in the District of New Jersey and in any other judicial district where the jurisdiction thereof lies any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized by law to conduct.

The Department is informed that various persons, companies, corporations, firms, associations, and organizations to the Department unknown have violated in the above-named district and in other judicial districts the laws relating to extortion in aid of racketeering (18 U.S.C. [§] 1951), embezzlement of union funds (29 U.S.C. [§] 501(c) and the funds of welfare and pension plans (18 U.S.C. [§] 664), payments by employers to their employees and to officials of labor organizations (29 U.S.C. [§] 186), the filing of reports and the maintenance of records by unions and union officials (29 U.S.C. [§] 439), deprivation of the rights of a union member by force (29 U.S.C. [§] 530), obstruction of justice (18 U.S.C. [§] 1503), obstruction of criminal investigations (18 U.S.C. [§] 1510), obstruction of state or local law enforcement (18 U.S.C. [§] 1511), travel and transportation in aid of racketeering (18 U.S.C. [§] 1952), transmission of bets, wagers, and related information by wire communications (18 U.S.C. [§] 1084), interstate transportation of wagering paraphernalia (18 U.S.C. [§] 1953), prohibition of illegal gambling businesses (18 U.S.C. [§] 1955), racketeer influenced and corrupt organizations (18 U.S.C. [§] 1962), perjury (18 U.S.C. [§] 1621), false declarations (18 U.S.C. [§] 1623), mail fraud (18 U.S.C. [§] 1341), fraud by wire (18 U.S.C. [§] 1343), interstate transportation of stolen property (18 U.S.C. [§] 2314), wire and radio communication (47 U.S.C. [§] 203 and 501), internal revenue (26 U.S.C. [§] 7201–7206), and other criminal laws of the United States and have conspired to commit all such offfenses in violation of Section 371 of Title 18 of the United States Code.

You are to serve without compensation other than the compensation you are now receiving under existing appointment.

Please execute the required oath of office and forward a duplicate thereof to the Criminal Division, Department of Justice.

Sincerely,
(Signed) HENRY E. PETERSEN
HENRY E. PETERSEN
Assistant Attorney General

Defense counsel, in their joint presentation to the court, raise the following issues for determination: (1) whether the Attorney General has the power under 28 U.S.C. § 515(a) to authorize the presentation of matters to a Grand Jury (and to represent the United States in subsequent criminal proceedings) through the assignment of Special Attorneys (Strike Force Attorneys) on a continuing and established basis; (2) assuming that such power exists, whether that power is delegable; (3) if delegable, whether that power was properly delegated to Department of Justice officials; (4) if properly delegated, whether that delegated power was properly exercised by a Department of Justice official.

28 U.S.C. § 515(a) reads as follows:

The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

The defendants allege that under § 515(a) the Attorney General may not commission a Special Attorney to appear before a Grand Jury on a routine and continuous basis. From that premise, defendants would then have this Court conclude that the Attorney General is not authorized under 28 U.S.C. § 515 to initiate and maintain a Strike Force Field Office either in this District or elsewhere. Alleging that a Strike Force Field Office is in effect a competing United States Attorney's office, and thus violative of Congressional intent as expressed in 28 U.S.C. §§ 541 et seq., defendants would have this Court declare as illegal the entire "Strike Force" concept.

■ That the Attorney General may designate a Special Attorney to appear before a grand jury on an ongoing basis is clear. United States v. Hall, 145 F.2d 781 (9th Cir. 1941) (such land cases as from time to time shall be assigned); United States v. Morton Salt Co., 216 F.Supp. 250 (D.Minn.1962), aff'd per curiam, 382 U.S. 44, 86 S.Ct. 181, 15 L. Ed.2d 36 (1965) (regularly assigned to investigate the salt industry). Further, 28 U.S.C. § 515(a) empowers the Attorney General to appoint Special Attorneys for a district with powers equal to that of a United States Attorney, to be exercised on a continuing and established basis. United States v. Hall, 145 F.2d at 785; see also, United States v. Andreas, 374 F.Supp. 402, 409, n. 9 (D. Minn.1974).

28 U.S.C. § 510, which reads:

The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

empowers the Attorney General to delegate "any function" of the Attorney General to "any other officer" of the Department of Justice "from time to time . . . as he considers appropriate." Under this section, the Attorney General's powers under § 515(a) are delegable. See May v. United States, 236 F. 495 (8th Cir. 1915); United States v. Huston, 28 F.2d 451, 455 (N.D.Ohio 1928).

Subpart K of Chapter 128, C.F.R., contains those provisions by which the Attorney General has delegated his powers to the Assistant Attorney General in charge of the Criminal Division of the Justice Department; and § 0.55 in Subpart K reads in pertinent part as follows:

Subject to the general supervision and direction of the Attorney General and under the direction of the Deputy Attorney General the following described matters are assigned to, and shall be

conducted, handled, or supervised by, the Assistant Attorney General in charge of the Criminal Division:

(a) Prosecutions for Federal crimes not otherwise specifically assigned.

* * *

(g) Coordination of enforcement activities directed against organized crime and racketeering.

§ 0.60 in Subpart K, effective July 13, 1972, reads as follows:

The Assistant Attorney General in charge of the Criminal Division is authorized to designate attorneys to present evidence to grand juries in all cases assigned to, conducted, handled, or supervised by the Assistant Attorney General in charge of· the Criminal Division.

Pursuant to this delegation of authority, Henry E. Petersen, then Assistant Attorney General in charge of the Criminal Division of the Justice Department, by commission letter to Messrs. Coonan, Williamson, Gregorie and Arnold, wrote that each was

"specially . . . appointed as a Special Attorney . . . and specially authorized . . . to conduct . . . grand jury proceedings . . ."

■■ It thus appears that the power of the Attorney General to appoint a Special Attorney to appear before a Grand Jury is delegable and was properly delegated to Mr. Petersen. *See* United States v. Crispino, 392 F.Supp. 764 (S.D.N.Y.1975); United States v. Brown, 389 F.Supp. 959 (S.D.N.Y.1974); Sandello v. Curran, M 11–188 (S.D.N.Y. 1974).

This delegation of authority is unlike the delegation rejected by the Supreme Court in United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). In *Giordano* the Court held that the Attorney General could not rely on the delegation provisions of 28 U.S.C. § 510 because the wiretap law, 18 U.S.C. § 2516(1), explicitly limited authorization of wiretaps to "the Attorney

General, or any Assistant Attorney General specially designated by the Attorney General." Thus the Attorney General could not designate an Executive Assistant to the Attorney General to approve wiretap authorization. The *Giordano* decision, based on the sensitive nature of the wiretapping statute, and the legislative history of that statute, is not controlling on the issues raised herein. *See* United States v. Brodson, 390 F.Supp. 774 (E.D.Wis.1975).

The defendants in United States v. Badalamenti further question the authority of Deputy Attorney General Sneed, the author of Mr. Clark's July 10, 1973, letter, to appoint Special Attorneys to appear before a Grand Jury. It is the position of the United States that the Deputy Attorney General is authorized to exercise the power to appoint Special Attorneys pursuant to 28 C.F.R. § 0.15(a) which reads:

The Deputy Attorney General is authorized to exercise all power and authority of the Attorney General specified in Sec. 0.5 of Subpart B of this part (the powers of the Attorney General which include the powers under Sec. 515(a), *see* 28 C.F.R. Sec. 0.5(f)) unless any such power or authority is required by law to be exercised by the Attorney General personally or *has been specifically delegated to another Department Official.* (emphasis added)

While pressing their claim that the Attorney General's authority under Sec. 515(a) is non-delegable, the *Badalamenti* defendants argue that by Order 487–72 the Attorney General delegated his authority under Sec. 515(a) to the Assistant Attorney General in charge of the Criminal Division. Order 487–72, effective July 13, 1972, approximately one year before the Clark letter, reads as follows:

This Order delegates to the Assistant Attorney General in charge of the Criminal Division the Attorney General's authority under 28 U.S.C. Sec. 515(a) to designate attorneys to

present evidence to grand juries in criminal cases.

By virtue of the authority vested in me by 28 U.S.C. [§§] 509, 510 and 5, U.S.C. [§] 301, Subpart K of Part O of Chapter I of Title 28, Code of Federal Regulations, is amended by adding the following new Sec. 0.60:

Sec. 0.60 Designation of attorneys to present evidence to grand juries.

The Assistant Attorney General in charge of the Criminal Division is authorized to designate attorneys to present evidence to grand juries in all cases assigned to, conducted, handled, or supervised by the Assistant Attorney General in charge of the Criminal Division. (37 Fed.Reg. 13695, July 13, 1972)

It is their contention that such a delegation to the Assistant Attorney General works to the exclusion of all others in the Justice Department, including Deputy Attorney General Sneed.

The United States has furnished the Court and defense counsel copies of internal memoranda, one from Mr. Keeney, Chief of the Fraud Section, to Mr. Petersen, dated July 5, 1973, the other from Mr. Petersen to Mr. Sneed, dated July 9, 1973, recommending that Mr. Clark be authorized to conduct Grand Jury proceedings in this District for the purpose of the Badalamenti case.

While these memoranda would indicate that Department of Justice officials assumed that the Deputy Attorney General had the power to specially authorize appearances before a Grand Jury, such an agency construction, while concededly of some persuasion, is not binding on this Court. United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

■ My independent review of Sec. 510, and the regulations promulgated thereunder, leads me to conclude that Deputy Attorney General Sneed did, in fact, have authority to authorize Mr. Clark's appearances before a Grand Jury. Nothing in the legislative history of § 515(a) indicates that Congress intended to circumscribe the Attorney General's powers to delegate those functions under § 510 to one specific person; § 510 empowers the Attorney General to delegate his authority to any other officer of the Department of Justice as he deems it appropriate. Under 28 C.F.R. § 0.15, the Deputy Attorney General, under whose direction the Assistant Attorney General in charge of the Criminal Division now operates, see 28 C.F.R. § 0.55, has broad delegated authority. He may perform all the functions of the Attorney General pursuant to § 515(a) unless the Attorney General specifically delegates that function to another Justice Department official. While it is true that under § 0.-60 the authority to authorize appearances before a Grand Jury has been delegated to the Assistant United States Attorney in charge of the Criminal Division, I read § 0.60 as broadening the power of the Assistant Attorney General rather than restricting that of the Deputy Attorney General, his superior. Nothing in the statutes or the regulations mandates a contrary result.[2] It would indeed be anomalous, unless clearly stated by the Attorney General, or by statute, as in United States v. Giordano, *supra,* that the officer who now directs the Assistant Attorney General had powers less broad than his inferior officer.

Although Mr. Clark's letter was signed when the direction and supervision of the Assistant Attorney General reposed in the Attorney General, See 28

---

2. I find defendants' argument unpersuasive that because the Deputy Attorney General is empowered to take final action under 28 C. F.R. § 0.15(b)(3)(ii) in matters pertaining to the appointment of Assistant United States Attorneys and other attorneys to assist United States Attorneys under 28 U.S.C. §§ 542, 543 he is powerless to appoint Department of Justice attorneys. See 28 C.F. R. § 0.15(b)(3)(i). Upon appointment, Department of Justice attorneys can then be specifically directed by the Deputy Attorney General under § 0.15.

C.F.R. § 0.55, amended by Order No. 543–73, 38 Fed.Reg. 29585 (Oct. 26, 1973), the principles of broad delegation hereinabove discussed are equally applicable. This Court is of the opinion, therefore, that Mr. Sneed, when he signed Mr. Clark's letter commission, was acting under proper delegated authority.

Accordingly, this Court finds that the various Department of Justice attorneys who presented the criminal matters now before me were properly appointed specially to appear before Grand Juries.

The more troublesome issue raised by the various defendants is whether the various Department of Justice attorneys were "specifically directed by the Attorney General" (or by a Deputy Attorney General or Assistant Attorney General to whom the Attorney General had properly delegated the function to appoint Special Attorneys) to present the various matters at issue here before the Grand Jury, as is mandated by § 515(a).

The Department of Justice Attorneys, in addition to their commission letters, which (except for Mr. Gregorie's) are broad and vague, see United States v. Crispino, supra, United States v. Wrigley, 392 F.Supp. 9 (W.D.Mo., 1975), rely on two documents as indicating that they were specifically directed to present the questioned matters. The first is an internal Department of Justice memorandum dated May 18, 1972, from Mr. Joseph Cella of the Criminal Division to Mr. Harold Koffsky, Chief of the Legislation and Special Projects Section of the Criminal Division. As was noted in Crispino, it was shortly after this memorandum that the Department changed the form of the commission letter from that given to Mr. Gregorie to those which were given to the other attorneys. After careful in camera review, I find this memorandum irrelevant to the issues raised in these motions. Nonetheless, it shall be sealed for any future appellate review. The second document,

Order No. 43170, issued by the Attorney General of the United States on April 20, 1970, and which contains guidelines for the administration and operation of the Strike Force, limits its zone of activities to organized crime. I find the thrust of that order, which defense counsel have seen, inconsistent with the broad range of duties which the Department of Justice attorneys urge they possess.

The guidelines do confirm my own understanding of the function of the Strike Force. The Strike Force concept was adopted to present a permanent and continuing coordinated attack on organized crime by utilizing attorneys and investigators with particular expertise in certain Districts. As such, the function of the Strike Force was to "beef up" the various United States Attorneys' offices which must deal with violations of all Federal crimes.

Such a concept was and is commendable. As President Johnson, during whose term the Strike Force concept was initiated, said in 1968:

"It is clear that sporadic, isolated, uncoordinated attacks on the disciplined army of the underworld cannot obtain lasting results." To Insure the Public Safety—Message from the President of the United States, (H. Doc. 250), 114 Cong.Record 2412 (Feb. 7, 1968).

That the Strike Force attorneys' roles were viewed as limited to organized crime, see Organized Crime Message from the President of the United States (H.Doc.No.91–105), 115 Cong.Record 10041, 10042 (April 23, 1969), and then Attorney General Mitchell's description of the Strike Force in a hearing before the Subcommittee On The Judiciary on the Organized Crime Control Act of 1970, 91st Cong., 1st Sess. (1969), wherein Mr. Mitchell stated:

The strike force concept is bottomed on the view that a highly effective investigative effort can be achieved if in-

vestigators from different government agencies work together as a team. A strike force composed of experienced supervisory investigators and attorneys, concentrating their efforts on a single identified Cosa Nostra family, can accomplish more than the loosely coordinated effort of the different agencies operating through routine and established practices. Central to the strike force design is the concept of mutual planning, based on combined intelligence and pooled experience. Participants in the project have the dual function of participating in the formulation of the group's strategy and coordinating the implementation of that strategy by their agency. In effect, each participant is a conduit for the dissemination of intelligence information to and from his agency for the other participants. Additionally, the agency representative insures that the group acts in compliance with the internal regulations of his agency. It is of paramount importance to the project that assigned members must be of supervisory level. Each participant must be able to secure the unqualified cooperation of his agency's local office, and to make or obtain high level decisions on the conduct of investigations by local or field personnel of his agency.

It is with this view of the function of the Strike Force that I must decide whether the attorneys here involved were specifically directed to appear before Grand Juries in these matters.

That a specific direction is needed is clear, as § 515 plainly states. An attempt to eliminate the phrase "when specifically directed by the Attorney General" was made in 1945 by Senator McCarren's proposed legislation, S. 1519, 79th Cong. 1st Sess. (1945), but it was never reported out of committee.

The letter commissions before me direct the various attorneys to

conduct . . . any kind of legal proceedings including grand jury pro-

ceedings and proceedings before committing magistrates, which United States Attorneys are authorized to conduct.

Defendants rely heavily on United States v. Crispino, and the cases cited therein, for the proposition that the specific direction must be limited in some way, at least to a general category of crimes, such as, for example, organized crime cases. Perhaps this phrasing of the form letters would have obviated the necessity of these motions. On the other hand, the Court might then have been confronted with motions alleging that certain crimes, or defendants, were not associated with organized crime and therefore fell outside the function of the Special Attorney. In any event, I decline to follow *Crispino* and find that the Special Attorneys were specifically directed to appear, within the intendment of § 515(a).

As the legislative history indicates, the Congress in enacting the statute which has now become Sec. 515(a) was attempting to expand the authority of the Attorney General to comprehensively and effectively combat crime and to make certain that the Attorney General and those under his direction were empowered to conduct any criminal or civil proceedings which United States Attorneys were authorized to conduct. H.R.Rep.No.2901, 59th Cong., 1st Sess. (1906). *See* United States v. Weiner, 392 F.Supp. 81 (N.D.Ill., 1975). Congress clearly recognized the need in 1906 to bring specialized law enforcement efforts to bear in special cases.

While the Congressional intent has remained unchanged since 1906, the philosophy and methods of law enforcement have. As Judge Pollack in tracing the history of the Strike Force recognized in United States v. Brown, 389 F.Supp. 959 (S.D.N.Y., 1975), the prior custom of appointing a Special Attorney for a special case, *see* e. g., United States v. Twining, 132 F. 129 (D.N.J.1904) (spe-

cific case named); United States v. Rosenthal, 121 F. 862 (S.D.N.Y.1903) (fraudulent importations of Japanese silks); United States v. Virginia-Carolina Chemical Co., 163 F. 66 (M.D.Tenn. 1908) (fertilizer trust cases); May v. United States, 236 F. 495 (8th Cir. 1916) (oleomargarine cases); United States v. Morse, 292 F. 273 (S.D.N.Y. 1922) (sale of stock of certain named corporations); United States v. Martins, 288 F. 991 (D.Mass.1923) (specific cases named); United States v. Huston, 28 F.2d 451 (N.D.Ohio 1928) (specific cases and statutes named); United States v. Goldman, 28 F.2d 424 (D. Conn.1928) (violations of the National Prohibition Act); United States v. Amazon Industrial Chemical Corporation, 55 F.2d 254 (D.Maryland 1931) (specific cases named); Shushan v. United States, 117 F.2d 110 (5th Cir. 1941) (mail fraud cases), is not viable in attempting to combat and eradicate organized crime. Given the many facets of organized crime, more specifically in the letters of appointment might deny the prosecutor "adequate power to deal with the situation without impairment of usefulness or unnecessary reduplication of labor." United States v. Morse, 292 F. 273 (S.D.N.Y.1922).

In United States v. Amazon Industrial Chemical Corp., 55 F.2d 254 (D.Md. 1931) the authorizing letter was challenged as overbroad. That court stated:

Defendants claim that this commission is defective in that it fails to refer, either specifically or generally, to alleged violations of any federal statute. We consider that this argument is too great a refinement and not to be supported. It is true that the nature of the investigation, and the statute alleged to have been violated, are not set out in the appointment; and it is further true that it is customary to describe such an appointment with more particularity than was done in the present case. However, failure to do so is not fatal, because a mere matter of form and not of substance (55 F.2d at 256).

Sec. 515(a) may be read not as a limitation but as a broad grant authorizing commissions as general as those in the letters questioned here. United States v. Brown, *supra*; United States v. Weiner, *supra*. *See also*, In re DiGirlomo, 392 F.Supp. 997 (W.D.Mo., 1975). The legislative history fails to establish the intent of Congress to impose the requirement of specificity which defendants urge.

Moreover, some courts have found that the requirement that the attorney be "specially directed (to) conduct any kind of legal proceeding" is mainly for the protection of the United States. Shushan v. United States, 117 F.2d 110, 114 (5th Cir. 1941), cert. denied, 313 U. S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531, reh. denied, 314 U.S. 706, 62 S.Ct. 53, 86 L. Ed. 564; United States v. Powell, 81 F. Supp. 288, 291 (E.D.Mo.1948). The requirement protects the United States against an abuse of discretion by the Special Attorney and unnecessary expense (*see* e. g., Wall v. United States, 384 F.2d 758 (10th Cir. 1967).

As was stated in United States v. Martins, 288 F. 991 (D.Mass.1923):

The statute (the Act of 1906) should be given the meaning which is the more helpful and practical in the dispatch of the government's business, especially as this meaning has been placed upon it by the Department concerned.

Defendants, relying on *Crispino*, urge that such a broad interpretation of § 515(a) could cause a superseding of the United States Attorney's function by Strike Force attorneys, contrary to Congressional intent. As indicated in *Brown, Weiner* and *DiGirlomo* the inter-

nal Department of Justice guidelines and the actual realities of Federal criminal prosecution make that fear ill-founded.

The overriding purpose of § 515(a) and exigencies of the prosecutorial task in combating organized crime require a finding that the various Strike Force attorneys were specifically directed by Department of Justice officials[3] to present the matters *sub judice* to a Federal Grand Jury and to thereafter prosecute the defendants. As Judge Pollack stated in United States v. Brown, 389 F.Supp. at 963:

> Since the statute does not confine its application to particular facts or particular defendants, it would appear appropriate for the Court to implement the public policies to be served through Strike Force by upholding a broad grant of authority and to sustain a commission that directs members of the specially selected Strike Force to prosecute any kind of legal proceeding. Indeed to hold that such commissions are insufficiently specific would not serve any public purpose but might have mischievous and drastic effects as a precedent against the current needs of law enforcement across the country. No fundamental rights are at stake here that need be conserved in the constitutional interests of criminal targets. There is a strong public interest in implementing the broad purposes of the Congress and the executive by upholding the authority of the special prosecutors of the Strike Force.

Accordingly, defendants' motions to dismiss the indictments returned against them are denied.

Submit an appropriate form of order.